## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**SHAUN SHAFFER**,

     Plaintiff,

v.                                                          Case No: 8:23-cv-00680-WFJ-NHA

**JACOB SCARBOROUGH**; and
SHERIFF **GRADY JUDD**, only in
his Official Capacity as Sheriff of the
Polk County Sheriff's Department,

     Defendants.

_____

## <u>ORDER</u>

This matter comes before the Court on Defendants Jacob Scarborough ("Defendant Scarborough" or "the Deputy")[1] and Sheriff Grady Judd's ("Sheriff Judd") Motion for Summary Judgment. Dkt. 27. Plaintiff Shaun Shaffer has responded in opposition, Dkt. 35, and Defendants have replied. Dkt. 39.[2] Upon careful review of the record, the Court denies Defendants' motion for summary judgment.

## BACKGROUND

This dispute arises out of the fatal shooting of a dog and Defendant Scarborough's arrest of Plaintiff Shaffer. On January 31, 2021, Isaac Martinez and

---

[1] Defendant Scarborough is a former Polk County Sheriff's Department deputy. Dkt. 28 ¶ 1. Sometime after the incident that gave rise to the instant litigation, Defendant Scarborough left the employment of the Sheriff's Department in 2021 to pursue a career in real estate. *Id.*

[2] Plaintiff also filed a Motion to Strike or Limit Opinion Testimony of defense expert Dr. Richard Hough. Dkt. 26. This Order neither addresses Plaintiff's motion nor relies on Dr. Hough's deposition. Further, Defendants' response to the motion to strike makes it clear that Defendants' motion for summary judgment does not "hinge upon the testimony of Dr. Hough." Dkt. 33 at 3.

Rebecca Smith were walking their dogs in their Lakeland, Florida neighborhood. Dkt. 28 ¶ 2. During the afternoon walk, another dog from a neighbor's house became aggressive and charged at Mr. Martinez and Ms. Smith. *Id.* ¶¶ 5-6. Mr. Martinez, an off-duty Lakeland Police Officer, yelled at his neighbor, McNary, to take control of the aggressive dog. *Id.* ¶¶ 5, 7. When the dog failed to comply with McNary's instructions, Mr. Martinez drew his handgun and fatally shot the animal after it had begun to attack Ms. Smith's dog. *Id.* ¶¶ 6-7.

In response to the gunshots, a crowd of people who lived in the neighborhood began to converge on the site of the fatal shooting. *Id.* ¶ 8. Mr. Martinez called 911, identified himself as a Lakeland Police Officer, stated that he had just shot a dog, and described his neighbors as "starting to get 10-8 irate." *Id.* ¶ 10. Defendant Scarborough quickly arrived on the scene after receiving the dispatch call for gunshots in a neighborhood. *Id.* ¶ 14. After arriving, Defendant Scarborough and other deputies began to investigate the fatal dog shooting. *Id.* ¶ 17.

While the investigation was ongoing, Plaintiff Shaffer arrived on scene and made several demands to the deputies, including a request to speak with the shooter and questioning whether the deputies had arrested anyone.[3] *Id.* ¶¶ 20, 23.  At the time of Shaffer's arrival, approximately 15-20 people were lined up along the street.

---

[3] Plaintiff states that Defendant Scarborough was talking and joking with the other deputies when he arrived on scene. Dkt. 36 ¶ 3.

*Id.* ¶ 21. In response to his demands, Defendant Scarborough asked Plaintiff whether he had witnessed the shooting, to which Plaintiff responded, "No." *Id.* ¶ 22. Plaintiff recalls telling the deputies that "you can't just have somebody firing off a weapon" and "stray bullets kill people." *Id.* ¶ 24. During this verbal interaction, Mr. Martinez testified that Plaintiff was yelling aggressively and angrily. *Id.* ¶ 25. Ms. Smith recalled that Defendant Scarborough intervened to prevent Plaintiff from getting closer to Mr. Martinez and Ms. Smith. *Id.* ¶ 26.

Following the initial confrontation, Defendant Scarborough and another responding deputy ordered Plaintiff to leave the scene at least three times. *Id.* ¶¶ 27, 29. According to Mr. Martinez, Plaintiff did not immediately leave but waived his fist in the air while continuing to yell that "stray bullets kill people." *Id.* ¶ 28. However, Plaintiff contends Defendant only ordered Plaintiff to leave the scene once. Dkt. 36 ¶ 4. In compliance with that order, Plaintiff recalls he walked across the street, opened his car door, and said, "stray bullets kill people." *Id.* Plaintiff testified he did not make any additional gestures and only said the statement one time. *Id.* Further, Plaintiff contends he was not trying to incite a riot or any sort of violence by making that statement. *Id.* Defendant Scarborough allegedly responded, "And so do cops." *Id.* Plaintiff stated he was in fear for his life, got into his car, and drove home. *Id.*

In his deposition, Defendant Scarborough described the initial confrontation with Plaintiff as "stressful" and believed that Plaintiff "was trying to get the neighborhood riled up again. He was trying to incite a group of people to be vocally, physically, . . . upset and resistant to our investigation." *Id.* ¶ 31. Based on this alleged interference with an ongoing investigation, Defendant Scarborough reversed his command for Plaintiff to leave the scene and allegedly ordered Plaintiff to "stop." *Id.* ¶ 34. When Plaintiff was ordered to stop, Defendant Scarborough believed they were on opposite sides of Plaintiff's car. *Id.* ¶ 35. Plaintiff testified he does not recall Defendant Scarborough ever telling him to stop, to come back, that he was being detained, that he was being arrested, or that Plaintiff should not leave as previously instructed. Dkt. 36 ¶ 5.

Following Plaintiff's departure from the scene, Defendant Scarborough got into his patrol car and followed Plaintiff to his house. Dkt. 28 ¶ 37. At this point, the facts concerning Plaintiff's arrest are heavily disputed and contradictory. Some witnesses testified that Defendant Scarborough had his police lights on while following Plaintiff. *Id.* ¶¶ 38, 42. Other witnesses, however, do not recall any lights or sirens. Dkt. 36 ¶¶ 6, 8.

Plaintiff provides the following description of his arrest:

When Mr. Shaffer parked his car, in his yard, opened his car door, put his foot out, and before he could stand up, Deputy Scarborough rushed him, stood him up, spun him around, and proceeded to arrest him. Deputy [Scarborough] punched Mr. Shaffer on the right side of his

head, by his upper cheek and temple, while Mr. Shaffer was facing away from the deputy. Deputy Scarborough didn't say stop, freeze, stand up, put your hands in the air, or you're under arrest. Mr. Shaffer was in a state of panic because he didn't know why Deputy Scarborough attacked him and what he was doing. Mr. Shaffer was admittedly trying to pull his arms away while Deputy Scarborough was handcuffing him because he did not commit any crime and didn't know why Deputy Scarborough was doing what he was doing.

Mr. Shaffer was already parked in his driveway, getting out of his car, when the deputy just ran up to him, jumped up, and Superman punched him in the head.

[Tina Haslwanter recalled] Mr. Shaffer was already getting out of his car when the Deputy approached him and turned him around. They didn't get to talk face-to-face at all. He turned Mr. Shaffer around really fast. Mrs. Haslwanter saw Mr. Shaffer's head go back and the neighbor came running and yelled, "He [deputy] just hit him."

Shaffer was not fighting back and didn't have a weapon. Shaffer wasn't being aggressive and the Deputy just jumped on him. The only aggression was from the Deputy. Shaffer did not resist the Deputy at any time. Mr. Shaffer was not pulling away from the Deputy, nor attempting to flee. Mr. Shaffer did not threaten Deputy Scarborough, any other deputy, or person that was present. Mr. Shaffer never struck Deputy Scarborough. Nor did Mr. Shaffer ever reach for the Deputy's gun or gun belt.

Mr. [Todd] Jefferies did not hear the Deputy give Mr. Shaffer any commands prior to going hands on. Mr. Shaffer was opening his door and getting out of his car when the Deputy was already running towards him. There was no time for commands because the Deputy already made up his mind to charge Mr. Shaffer and superman punch him.

Dkt. 36 ¶¶ 9-13 (citations omitted and cleaned up). Defendants provide the following

version of Plaintiff's arrest:

Deputy Scarborough testified that Plaintiff's car windows were down when Deputy Scarborough asked Plaintiff to get out of his car; he

refused. When Deputy Scarborough opened the door to Plaintiff's car and asked Plaintiff again to get out of the car, Plaintiff refused again.

Deputy Scarborough began to pull Plaintiff from the car. . . .

Deputy Scarborough testified that, when he was attempting to handcuff Plaintiff, Plaintiff started grabbing at items on Deputy Scarborough's duty belt.

When, according to Deputy Scarborough, Plaintiff would not stop grabbing at items on Deputy Scarborough's duty belt, Deputy Scarborough "delivered one closed fist strike" to Plaintiff's face/head, at which time Plaintiff became compliant.

Plaintiff denies that he attempted to grab at items on Deputy Scarborough's duty belt.

Plaintiff admits that he was resisting being arrested by pulling his arms away from Deputy Scarborough.

It was only after Deputy Scarborough struck Plaintiff on his right upper cheek and temple that Plaintiff stopped resisting and allowed Deputy Scarborough to handcuff him.

Plaintiff's neighbor [William Wilbanks] testified that it appeared that Plaintiff was resisting getting out of the car and following Deputy Scarborough's directions.

Dkt. 28 ¶¶ 44-52 (citations omitted and cleaned up).

Plaintiff was charged with (1) resisting without violence; (2) fleeing to elude; (3) resisting with violence; and (4) battery on a law enforcement officer. *Id.* ¶ 55. All criminal charges against Plaintiff were dropped by the state prosecutor. Dkt. 36 ¶ 14. Following the arrest, Plaintiff went to a hospital twice due to dizzy spells, but a subsequent CAT scan did not reveal any injuries. Dkt. 28 ¶ 56. Plaintiff also

6

reported numbness on the top of his thumb that subsided after approximately two months. *Id.* ¶ 57.

On March 27, 2023, Plaintiff brought federal claims under 42 U.S.C. § 1983 for false arrest (Count I) and excessive force (Count II) against Defendant Scarborough. Plaintiff also asserts state law claims for false arrest (Count III) and battery (Count IV) against Defendant Sheriff Judd in his official capacity as Sheriff of the Polk County Sheriff's Department, proper under the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). Defendants now timely move for summary judgment on all counts of the Complaint. Dkt. 27.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.*

The moving party bears the initial burden of identifying those portions of the record demonstrating the lack of a genuinely disputed issue of material fact. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If met, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (citation omitted). To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must go beyond the pleadings and "identify affirmative evidence" that creates a genuine factual dispute. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).

In determining whether a genuine dispute of material fact exists, the Court must view the evidence and draw all factual inferences in a light most favorable to the non-moving party. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). In addition, the Court must resolve any reasonable doubts in the non-moving party's favor. *Id.* Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita*, 475 U.S. at 587.

## DISCUSSION

Defendants assert "Deputy Scarborough is entitled to qualified immunity on the federal claims of false arrest and excessive force; Sheriff Judd, in his official capacity, is not liable for false arrest under state law; and Sheriff Judd, in his official

capacity, is not liable for battery under state law." Dkt. 27 at 10. The Court denies the motion and will address each argument in turn.

## I. Qualified Immunity

The qualified immunity defense shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982); *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012). "[E]ntitlement to qualified immunity is for the court to decide as a matter of law." *Simmons v. Bradshaw*, 879 F.3d 1157, 1163 (11th Cir. 2018).

Importantly, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving party]." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." *Id.* "If, at the summary judgment stage, the evidence construed in the light most favorable to the plaintiff shows that there are facts inconsistent with granting qualified immunity, then the case and the qualified immunity defense proceed to trial." *Stryker v. City of Homewood*, 978 F.3d 769, 773 (11th Cir. 2020).

To receive qualified immunity, an official must first "establish that he or she acted within the scope of discretionary authority when the allegedly wrongful acts

occurred." *Robinson v. Sauls*, 46 F.4th 1332, 1340 (11th Cir. 2022) (citations and internal quotations omitted). Once this showing is made, the burden shifts to the plaintiff to show that (1) the defendant violated a constitutional right and (2) this right was clearly established at the time of the alleged violation. *Id.* at 1340–41.

As an initial matter, there is no dispute that Defendant Scarborough acted within the scope of his discretionary authority when he arrested Plaintiff. Plaintiff's Complaint concedes that Defendant Scarborough "was at all times relevant to this Complaint duly appointed and acting as a deputy for the Polk County Sheriff's Department, acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or the Polk County Sheriff's Department." Dkt. 1 ¶ 8. Rather, the heart of this dispute is Plaintiff's contention that Defendant Scarborough's false arrest without probable cause and use of excessive force violated his Fourth Amendment rights. Dkt. 35 at 4, 10.

While Plaintiff's claims for false arrest and excessive force are both grounded in the Fourth Amendment's prohibition on "unreasonable searches and seizures," U.S. Const. amend. IV, the Eleventh Circuit has been clear such claims must be evaluated separately. *Richmond v. Badia*, 47 F.4th 1172, 1179 (11th Cir. 2022). For a false arrest claim, the "existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Brown v. City of*

*Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010) (citing *Case v. Eslinger*, 555 F.3d 1317, 1326–27 (11th Cir. 2009)).

However, "[u]nlike a false arrest claim, a genuine excessive force claim is not resolved by the existence of probable cause." *Badia*, 47 F.4th at 1180. Even when probable cause for an arrest is present, "the manner in which a search or seizure is conducted" must comply with the Fourth Amendment. *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985). As such, a "genuine" excessive force claim "relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest." *Badia*, 47 F.4th at 1180 (quoting *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008)). However, the Eleventh Circuit has contrasted "genuine" excessive force claims with "artificial" claims that "an officer's use of force is excessive only because an arrest was not supported by probable cause." *Id.* "[A]n artificial excessive force claim—that force was excessive merely because another Fourth Amendment violation occurred—'is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim.'" *Id.* (quoting *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000)). Thus, "a plaintiff cannot double recover—once for false arrest and again for excessive force—when the absence of probable cause is the only thing that makes an officer's use of force unreasonable." *Id.* at 1180–81.

Based on the evidence before the Court, "[a] plaintiff might succeed in proving the unlawful arrest claim, the excessive force claim, both, or neither." *Badia*, 47 F.4th at 1181 (citing *Cortez v. McCauley*, 478 F.3d 1108, 1127 (10th Cir. 2007) (en banc)); *see also Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). With this legal background in mind, the Court will begin with Plaintiff's false arrest claim and then turn to Plaintiff's excessive force claim.

### a. Qualified Immunity for Federal False Arrest Claim

Plaintiff asserts that Defendant Scarborough violated his Fourth Amendment rights because the Deputy seized him without arguable probable cause. Dkt. 35 at 4. Defendant Scarborough contends he has qualified immunity against a false arrest claim because he "had arguable probable cause to arrest Plaintiff for obstructing the lawful execution of a legal duty." Dkt. 27 at 16. Based on this record, at this juncture the Court finds Defendant Scarborough did not have arguable probable cause to arrest Plaintiff following his departure from the area at Defendant Scarborough's order.[4]

---

[4] Defendants' motion claims that "even if Plaintiff was able to present a prima facie case of a false arrest, the unlawfulness of the arrest was not apparent in light of preexisting law." Dkt. 27 at 18. The Court disagrees. "There is no question that the second step of the qualified immunity analysis—whether the right violated was clearly established—is satisfied, as it is clearly established that an arrest made without probable cause violates the Fourth Amendment." *Davis v. Williams*, 451 F.3d 759, 764 n.8 (11th Cir. 2006) (citing *Thornton v. City of Macon*, 132 F.3d 1395, 1399 (11th Cir. 1998)); *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990). As such, the Court's inquiry only focuses on the first step of the qualified immunity analysis—whether Plaintiff's constitutional rights were violated.

To succeed on a federal false arrest claim, a plaintiff must establish the officer lacked probable cause. *See Crocker v. Beatty*, 995 F.3d 1232, 1243–44 (11th Cir. 2021). When a police officer has probable cause to make an arrest, a false arrest claim fails. *Id.* at 1243 "[P]robable cause exists when the facts, considering the totality of the circumstances and viewed from the perspective of a reasonable officer, establish 'a probability or substantial chance of criminal activity.'" *Washington v. Howard*, 25 F.4th 891, 898–99 (11th Cir. 2022) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)). Courts look to the elements of the alleged crime and the facts presented to determine whether an officer had probable cause. *Brown*, 608 F.3d at 735.

Additionally, a police officer may still be entitled to qualified immunity if they had "arguable probable cause" to arrest an individual. *Id.* at 734. "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." *Id.* (internal quotations and citation omitted). Arguable probable cause is evaluated by an objective standard "and does not include an inquiry into the officer's subjective intent or beliefs." *Id.* at 735 (citing *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010)).

Here, Defendant's motion only points to one unlawful act that provided Defendant Scarborough with arguable probable cause to conduct an arrest,

Plaintiff's nonviolent obstruction of justice. Dkt. 27 at 13–14; *see* Fla. Stat. § 843.02.

Florida's obstruction of justice statutes provides:

> Whoever shall resist, obstruct, or oppose any officer . . . in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree . . . .

Fla. Stat. § 843.02. To support a conviction pursuant to § 843.02, a prosecutor must show: "(1) the officer was engaged in the lawful execution of a legal duty; and (2) the action by the defendant constituted obstruction or resistance of that lawful duty." *Davis v. Williams*, 451 F.3d 759, 764 (11th Cir. 2006) (citing *Slydell v. State*, 792 So. 2d 667, 671 (Fla. 4th DCA 2001)).

Beginning with element one, there is no dispute that Defendant Scarborough was engaged in the lawful exercise of a legal duty at the time of Plaintiff's arrival on scene. Defendant Scarborough responded to a dispatch call about gunshots in a residential neighborhood. Dkt. 28 ¶ 14; *see Brown v. Haddock*, No. 5:10-CV-130/RS-GRJ, 2011 WL 1655580, at *4 (N.D. Fla. May 2, 2011) ("[T]here is no question that the deputies were in the process of investigating a police dispatch, and thus, they were engaged in the lawful execution of a legal duty."). Upon his arrival, Defendant Scarborough began an investigation into the dog shooting by sorting through the growing crowd and interviewing potential witnesses. *Id.* ¶ 17; Dkt. 27-7 at 22:4-25:24, 32:14-33:17 (discussing Defendant Scarborough's interviews with

various witnesses before Plaintiff's arrival); Dkt. 27-5 at 11:20-12:3 (Rebecca Smith recounting the investigation the deputies conducted before Plaintiff arrived).

Following Plaintiff's arrival, Defendant Scarborough's investigation was still ongoing. Dkt. 28 ¶ 18; Dkt. 27-8 at 28:20-29:14; Dkt. 27-7 at 32:14-34:9; Dkt. 27-5 at 12:4-25; Dkt. 27-4 at 28:2-19. When Plaintiff approached the deputies, Defendant Scarborough involved Plaintiff in his investigation by questioning whether he had witnessed the recent shooting. Dkt. 28 ¶ 22; Dkt. 27-8 at 31:19-32:3; Dkt. 27-7 at 33:18-34:5. After Plaintiff confirmed he had not witnessed the shooting, Defendant Scarborough ordered him to leave the scene. Dkt. 28 ¶ 27; Dkt. 27-7 at 34:2-9; Dkt. 27-8 at 32:11-25. Orders by law enforcement officers to back away and leave the area are lawful. *See e.g., Andrade v. Marceno*, No. 2:19-CV-887-JES-MRM, 2023 WL 157087, at *7 (M.D. Fla. Jan. 11, 2023), *aff'd sub nom. Andrade v. Sheriff of Lee Cnty., Florida*, No. 23-10438, 2023 WL 6389812 (11th Cir. Sept. 29, 2023) (looking at Fla. Stat. § 843.02 and finding a deputy's order to back away from a patrol vehicle during an ongoing investigation was lawful). Thus, Defendant Scarborough has established the first element of § 843.02, by his execution of a legal duty.

The second element of § 843.02 is satisfied when "the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of [the officer's] legal duty." *C.E.L. v. State*, 24 So. 3d 1181, 1185–86 (Fla. 2009).

The facts in this case, viewed in the light most favorable to Plaintiff, cannot support a finding of even arguable probable for obstruction or resistance of a legal duty.[5] Florida courts have long held that absent very limited exceptions, "physical conduct must accompany offensive words to support a conviction under § 843.02." *Williams*, 451 F.3d at 765 (collecting Florida case law); *Alston v. Swarbrick*, 954 F.3d 1312, 1319 (11th Cir. 2020) ("At the time of the arrest it was clearly established that . . . 'mere words' would not suffice to provide probable cause for resisting without violence.").

Here, under Plaintiff's version of events, he never physically interfered with Defendant Scarborough's lawful exercise of a legal duty. As discussed above, the legal duty is Defendant Scarborough's investigation of the dog shooting. It is undisputed that when Plaintiff arrived on scene, he made several verbal demands about whether an arrest had been made and "why wasn't anything being done." Dkt. 27-8 at 19:1-6. However, it is also undisputed that Defendant Scarborough involved Plaintiff with the investigation by asking whether he witnessed the shooting. Dkt. 28 ¶ 22; Dkt. 27-8 at 31:19-32:3; Dkt. 27-7 at 33:18-34:5. Further, there is no dispute that Defendant Scarborough ordered Plaintiff to leave the scene once the Deputy

---

[5] Defendants' motion repeatedly relies on Defendant Scarborough's (disputed) version of events to contend that the Deputy had arguable probable cause. *See* Dkt. 27 at 16-17. This Court may not do the same. When determining whether a defendant is entitled to qualified immunity, the Court must resolve any issues of material fact in favor of the plaintiff. *Alston v. Swarbrick*, 954 F.3d 1312, 1317–18 (11th Cir. 2020) (citing *Stephens v. DeGiovanni*, 852 F.3d 1298, 1313 (11th Cir. 2017)).

concluded that Plaintiff could not provide any relevant information to his investigation. Dkt. 28 ¶ 27; Dkt. 27-7 at 34:2-9; Dkt. 27-5 at 12:18-21; Dkt. 27-4 at 15:10-11. In his deposition, Plaintiff recalls that Defendant Scarborough only ordered him to leave one time, Dkt. 27-8 at 39:5-14, and Plaintiff complied by getting into his car and leaving the scene. Dkt. 27-8 at 38:11-24. Without more, Plaintiff's verbal demands did not provide arguable probable cause for obstruction of justice.

Additionally, Defendants argue Plaintiff's words while leaving the scene were "riling up the crowd" to possibly incite a riot. Dkt. 27 at 16-17; Dkt. 27-7 at 41:19-23. While walking to his car, Plaintiff admits he told Defendant Scarborough that "stray bullets kill people.'" Dkt. 27-8 at 19:12-15. Plaintiff, however, never made any physical gestures and only made the verbal statement "just the one time" before getting into the car to leave the scene. Dkt. 27-8 at 38:7-14. Further, Plaintiff does not recall Defendant Scarborough telling him to stop, come back, not leave, that he was being detained, that he was under arrest, or provide any indication that the Deputy's previous order to leave was being rescinded. Dkt. 27-8 at 63:11-64:1. Based on Plaintiff's version of events, his mere words that "stray bullets kill people" cannot reasonably be construed as obstruction of a legal duty, especially in light of Plaintiff's compliance with Defendant Scarborough's order to leave.

Defendants' motion, however, heavily relies on Defendant Scarborough's subjective beliefs to argue the Deputy had arguable probable cause. Defendants argue the Deputy had "reasonably feared" that Plaintiff's words could "rile up the neighbors" to possibly incite violence, silence potential witnesses, and "jeopardize the safety of Mr. Martinez and Ms. Smith." Dkt. 27 at 16; *see* Dkt. 27-7 at 39:12-42:15. The Court declines to consider Defendant Scarborough's subjective beliefs about the situation. *See Brown*, 608 F.3d at 735. Instead, the Court looks to whether an objectively reasonable officer would have arguable probable cause in the same situation and finds such an officer would not. Indeed, Defendant Scarborough's deposition makes it clear that there was not a single instance of physical obstruction beyond Plaintiff's yelling and screaming. Defendant Scarborough admits that during the entire verbal confrontation, Plaintiff was never violent, never threatened anyone on scene, never attempted to injure anyone, never damaged any property, and never placed anyone in imminent danger of injury. Dkt. 27-7 at 35:11-24, 40:16-17, 41:24-43:16, 45:3-8. When questioned about which members of the crowd were so riled up by Plaintiff's words that they were about to riot, Defendant Scarborough could not identify a single person. Dkt. 27-7 at 40:14-41:23. Most importantly, Defendant Scarborough concedes not a single neighbor was rioting or becoming violent the entire time Plaintiff was at the scene of the dog shooting. Dkt. 27-7 at 49:9-15.

18

Under these facts as construed, no reasonable officer in Defendant Scarborough's position could have believed there was arguable probable cause to arrest Plaintiff under the Florida obstruction of justice statute. *See D.A.W. v. State*, 945 So. 2d 624, 627 (Fla. 2d DCA 2006) (finding an officer had no probable cause to arrest the defendant for obstruction when despite his verbal harassment and noting the officer's use of the legal phrase, "exciting the riot," was unsupported since there was no evidence the defendant made any statements encouraging anyone to take action against the officer); *J.G.D. v. State*, 724 So. 2d 711, 711–12 (Fla. 3d DCA 1999) (holding no probable cause to arrest for obstruction existed despite an officer's order directing the defendant to leave an apartment complex, despite the defendant's "loud and profane" protests, and despite the gathering of an "unruly crowd"); *D.G. v. State*, 661 So. 2d 75, 76 (Fla. 2d DCA 1995) (holding defendant's actions did not constitute obstruction when he protested "loudly and obnoxiously" and "refused to stop yelling after several warnings"); *Miller v. State*, 667 So.2d 325, 326–27 (Fla. 1st DCA 1995) (holding that suspect's loud arguing and cursing with police and others, which continued despite police ordering him to calm down, was not disorderly conduct).

In sum, when viewed in the light most favorable to Plaintiff, the Deputy did not have probable cause or arguable probable cause to arrest Plaintiff under Fla. Stat.

§ 843.02. Defendant Scarborough is not entitled to qualified immunity on Plaintiff's federal false arrest claim.

　　　b.　Qualified Immunity for Federal Excessive Force Claim

Turning to Plaintiff's federal excessive force claim, Defendant Scarborough argues the quantum of force used while attempting to arrest Plaintiff "does not constitute excessive force as a matter of law." Dkt. 27 at 20. Defendant Scarborough points out that Plaintiff suffered no physical injury, and that the quantum of force used was de minimis and reasonable. *Id.* at 21-22.

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Alston*, 954 F.3d at 1319–20 (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002)). "[E]ven de minimis force will violate the Fourth Amendment if the officer is not entitled to arrest or detain the suspect." *Id.* (citing *Reese v. Herbert*, 527 F.3d 1253, 1272 (11th Cir. 2008)). However, the Eleventh Circuit is clear that "where an excessive force claim is predicated solely on allegations the arresting officer lacked the power to make an arrest, the excessive force claim is entirely derivative of, and is subsumed within, the unlawful arrest claim." *Bashir v. Rockdale County*, 445 F.3d 1323, 1332 (11th Cir. 2006) (citation omitted).

Even after *Bashir*'s rule is applied, the entirety of Plaintiff's excessive force claim is not subsumed into his false arrest claim or is not so clearly subsumed to

grant summary judgment to Defendant Scarborough on this point. Defendant Scarborough's punch to Plaintiff's head and excessively tight handcuffs may qualify as a sufficient "discrete constitutional violation relating to the manner in which an arrest was carried out" that "is independent of whether law enforcement had the power to arrest." *Id.* at 1332; *see* Dkt. 1 ¶¶ 33, 36 ("The level of force used was objectively unreasonable and constitutes a violation of Plaintiff's Fourth Amendment rights. . . . [Defendant's] use of force upon Plaintiff was an objectively unreasonable use of force given the totality of the circumstances. His use of force was disproportionate to any claimed need to use force."). In other words, Plaintiff's federal excessive force claim is predicated on the "unreasonableness of the quantum of force used under the circumstances" and, at this stage of factual development, not solely on allegations that Defendant Scarborough lacked probable cause for the arrest. *Bashir*, 445 F.3d at 1332. This issue may appear differently in a trial.

To determine whether Defendant Scarborough is entitled to qualified immunity as to that use of force, the Court considers whether an "objectively reasonable officer in the same situation could have believed the use of force was not excessive." *Brown*, 608 F.3d at 738. In reviewing the use of force from the objective perspective of a reasonable officer on the scene, a court must consider "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or

attempting to evade arrest by flight." *Franklin v. Popovich*, 111 F.4th 1188, 1195 (11th Cir. 2024) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

As an initial matter, "even de minimis force will violate the Fourth Amendment if the officer is not entitled to arrest or detain the suspect." *Reese*, 527 F.3d at 1272 (citation and quotation marks omitted). Because the Court has concluded no reasonable officer would have had arguable probable cause to arrest Plaintiff, any force Defendant Scarborough used was excessive and in violation of the Fourth Amendment. *See Thornton v. City of Macon*, 132 F.3d 1395, 1400 (11th Cir. 1998) (noting because the officers arrested plaintiffs without probable cause, "[u]nder the circumstances, the officers were not justified in using *any* force, and a reasonable officer thus would have recognized that the force used was excessive." (emphasis in original)). Regardless, the Court will still consider the *Graham* factors to determine if Defendant Scarborough's force was excessive in light of his need to control the situation.

The first *Graham* factor slightly weighs in Plaintiff's favor. The Court recognizes that three of the charged offenses could be classified as serious crimes since they are third-degree felonies. *See* Fla. Stat. §§ 316.1935(2), 843.01, 784.07(2)(B). However, Defendant Scarborough's decision to subsequently charge Plaintiff for fleeing to elude, resisting with violence, and battery on a law enforcement officer all stem from the Deputy's unreasonable belief that he had

probable cause to arrest Plaintiff for obstruction of justice under § 843.02. Florida's obstruction of justice statute is a misdemeanor crime, and all charges were ultimately dismissed by the state prosecutor.[6] *See* Fla. Stat. § 843.02; Dkt. 36 ¶ 14; *Reese*, 527 F.3d at 1274 (citation omitted).

Next, Plaintiff did not pose an immediate threat to the safety of Defendant Scarborough or others. When construing the facts in the light most favorable to Plaintiff, there is no indication Plaintiff was being aggressive or fighting with Defendant Scarborough during the arrest. Dkt. 36 ¶¶ 9, 12. Indeed, Plaintiff did not threaten, strike, or attempt to flee from Defendant Scarborough. *Id.* One witness testified Plaintiff never resisted the arrest, and Defendant Scarborough was the one who "jumped" Plaintiff while he was in the process of getting out of his car. *Id.* ¶¶ 10, 12. Importantly, Plaintiff and two witnesses maintain that he never reached for Defendant Scarborough's gun or utility belt during the arrest. *Id*. ¶ 12. The only act of minor resistance is Plaintiff moving his hands from being handcuffed because he believed no crime had been committed. *Id.* ¶ 9. The "superman" punch to the head and tight handcuffs to the point of numbness could be considered excessive. Dkt. 36 ¶¶ 10, 15. Thus, the second factor also weighs in Plaintiff's favor.

---

[6] The Eleventh Circuit has noted, "the validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1322 n.23 (11th Cir. 2017) (citation and internal quotations omitted).

Finally, the third factor marginally weighs in Plaintiff's favor. Based on Plaintiff's testimony and the recollection of two other witnesses, there is no indication Plaintiff attempted to evade the arrest. *Id.* ¶¶ 9, 12, 13. Beyond briefly pulling his hands away from being handcuffed, Plaintiff did not actively resist the arrest, which is confirmed by a witness recalling Plaintiff was neither aggressive nor attempting to resist the Deputy. *Id.* ¶¶ 9, 12. Further, once Defendant Scarborough punched Plaintiff in the head, there is no dispute Plaintiff became totally compliant. *Id.* ¶ 10; Dkt. 28 ¶ 48. Since the *Graham* factors all weigh in Plaintiff's favor, this Court finds that, viewing the highly contested facts as the Court must at this stage, the force used was excessive in the objective totality of the circumstances.

Having determined that a reasonable jury could conclude that Defendant Scarborough used excessive force, the Court now turns to the second prong of the qualified immunity analysis—whether the right was clearly established at the time of the incident. There are three ways a right can be clearly established:

> First, "materially similar" case law may give an officer fair notice that his conduct would violate a constitutional right. *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). Second, the plaintiff can show the existence of a "broader, clearly established principle that should control the novel facts of [his] situation." *Id.* In other words, even "[i]f there is no case law directly on point, [g]eneral statements of the law contained within the Constitution, statute, or caselaw may sometimes provide 'fair warning' of unlawful conduct." *Id.* (internal quotation marks omitted). Finally, in rare instances and if no materially similar caselaw exists, an official may still have notice when their conduct violates a constitutional right with obvious clarity. *Id.* Absent one of these standards being met, qualified immunity will protect an

24

officer for conduct that falls within the "hazy border between excessive and acceptable force." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004).

*Badia*, 47 F.4th at 1184.

Here, Plaintiff fails to cite any "materially similar" case law that provided Defendant Scarborough with fair notice. However, Plaintiff points to a "broader, clearly established principle" in binding caselaw that provided the Deputy with fair warning. Dkt. 35 at 11–12 (citing *Haberski v. Bufano*, 728 F. App'x 903, 908–09 (11th Cir. 2018)). Prior to 2021, the Eleventh Circuit has made several general statements of law that could have provided fair warning to Defendant Scarborough's unlawful conduct. For example, it has clearly established that "unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment." *Haberski*, 728 Fed. Appx. at 908 (citing *Fils v. City of Aventura*, 647 F.3d 1272, 1288-89 (11th Cir. 2011)). Since the year 2000, the Circuit Court has also "repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." *Saunders v. Duke*, 766 F.3d 1262, 1265 (11th Cir. 2014) (collecting cases and denying qualified immunity to officer who slammed the suspect's head on the ground when suspect was not dangerous or attempting to flee); *see also Fils*, 647 F.3d at 1288–89 (tasing an unrestrained arrestee who had

committed a non-serious offense, who posed no threat to the safety of the officer or to others, who had disobeyed no orders, and who was not resisting arrest or attempting to flee constituted excessive force).

The most factually similar case is the Eleventh Circuit's decision in *Hadley v. Gutierrez*, where the Circuit Court explicitly stated, "a handcuffed, non-resisting defendant's right to be free from excessive force was clearly established in February 2002," and "[o]ur cases hold gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (finding officer's single punch to the stomach of a non-resisting, handcuffed arrestee constituted excessive force). Along the same vein, the Eleventh Circuit has also stated that "the application of gratuitous force on an already-handcuffed and compliant detainee or arrestee constitutes excessive force in violation of the Fourth Amendment, even if there is no visible or compensable injury." *Gomez v. U.S.*, 601 F. App'x 841, 850 (11th Cir. 2015); *see also Lee*, 284 F.3d at 1200 (holding force was excessive, and objectively unreasonable, when officer slammed arrestee's head against the trunk of a car after she was arrested, handcuffed, and completely secured); *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000) (finding officers' force was excessive where they kicked a handcuffed and non-resisting defendant in the ribs and beat his head on the ground).

Even though Defendant Scarborough's punch occurred before Plaintiff was handcuffed, the Eleventh Circuit has held that the rationales from decisions "concerned with gratuitous use of force on handcuffed suspects" can also apply to "the use of gratuitous force when the excessive force is applied prior to the handcuffing." *Badia*, 47 F.4th at 1184–85 (citing *Stephens v. DeGiovanni*, 852 F.3d 1298, 1328 n.33 (11th Cir. 2017)). Indeed, the Circuit Court has previously applied post-handcuffed rationales to "deny qualified immunity when [the officer has] unnecessarily thrown a non-resisting, unhandcuffed suspects on the ground." *Id.* (citing *Ingram v. Kubik*, 30 F.4th 1241, 1254 (11th Cir. 2022)); *see also Patel v. City of Madison*, 959 F.3d 1330, 1343 (11th Cir. 2020) (concluding that established law forbade the use of a leg sweep when the unhandcuffed plaintiff was complying with the officer's commands); *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000) (allowing for two minutes a police dog to attack and to bite the unhandcuffed plaintiff—a burglary suspect who had complied with officers' orders, posed no threat to the officers, and had made no attempt to flee or to resist—was an unconstitutionally excessive use of force). Here, under Plaintiff's version of the arrest, Defendant Scarborough had Plaintiff under control after forcibly pulling him out of the car, turning him around, and pushing him up against the vehicle. Dkt. 27-8 at 21:8-22:14. Based on witness testimony, Plaintiff was compliant, not resisting,

not aggressive, and never received a single command from the Deputy before he was "jumped" and punched in the head. Dkt. 36 ¶¶ 10-13.

Accordingly, the Court finds there is a clearly established principle and several general statements of the law that provided Defendant Scarborough with a fair warning that his conduct constituted excessive force. Defendants' request for summary judgment on Plaintiff's excessive force claim is denied.

## II.    State Law False Arrest and Battery Claims Against Sheriff Judd in His Official Capacity

Plaintiff's Complaint alleges his state law claims for false arrest and battery are "actionable against Defendant [Grady Judd] pursuant to § 768.28, Fla. Stat. (2013)." Dkt. 1 ¶¶ 39–50. In their motion for summary judgment, Defendants briefly argue Plaintiff's false arrest (Count III) and battery (Count IV) claims must be dismissed against Sheriff Judd since there was probable cause and a lack of excessive force. Dkt. 27 at 22–23.

Section 768.28 of the Florida Statutes provides that officers of the state (such as Defendant Scarborough) are immune from personal liability for torts committed within the scope of their employment. Fla. Stat. § 768.28(9)(a). However, Florida agencies or subdivisions—here, Sheriff Judd in his official capacity—may be sued and "held liable for an employee's intentional act(s) as long as the employee is acting within the course and scope of his employment and the act or omission is not committed in bad faith, with malicious purpose, or in a manner exhibiting wanton

28

and willful disregard of the plaintiff's rights." *City of Boynton Beach v. Weiss*, 120 So. 3d 606, 611 (Fla. 4th DCA 2013) (citing *City of Miami v. Simpson*, 172 So.2d 435 (Fla. 1965), and Fla. Stat. § 768.28). It is uncontested that Defendant Scarborough's actions were within the scope of his employment. Dkt. 1 ¶ 8; Dkt. 27 at 11.

Here, probable cause is an absolute bar to both false arrest and false imprisonment claims. *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998). However, taking Plaintiff's version of the facts as true, Defendant Scarborough lacked probable cause to arrest Plaintiff for obstruction of justice. *See supra.* I.a. Similarly, accepting Plaintiff's version of the facts, the Court has already concluded that a reasonable jury could find Defendant Scarborough employed excessive force. *See supra* I.b. Therefore, assuming a jury credits Plaintiff's version of events and finds Defendant Scarborough acted without probable cause and used excessive force, a reasonable jury may nevertheless conclude that the Deputy did not act in bad faith, with a malicious purpose, or in a manner exhibiting wanton and willful disregard of Plaintiff's rights. As such, Sheriff Judd could be held vicariously liable for Defendant Scarborough's tortious actions. The Court denies Defendants' motion for summary judgment on Counts III and IV.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that Defendants Jacob Scarborough and Sheriff Grady Judd's Motion for Summary Judgment, Dkt. 27, is **DENIED.**

**DONE AND ORDERED** at Tampa, Florida, on January 23, 2025.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record